NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Civil Action No. 14-cr-219 (JAP) |
| v. | : | **OPINION** |
| ELIYAHU WEINSTEIN, | : | |
| Defendant. | : | |

PISANO, District Judge

Presently before the Court is Defendant, Eliyahu Weinstein's ("Defendant" or "Weinstein") motion to dismiss the indictment [docket # 71]. The government opposes this motion [docket #75]. Defendant Weinstein also filed a supplemental brief on the basis of newly obtained evidence [docket #78]. The Court considered the papers filed by the parties and rules on the written submissions without oral argument. For the reasons that follow, this Court DENIES Defendant's motion to dismiss in its entirety.

**I.    BACKGROUND**

In October 2011, Defendant Weinstein was indicted by a grand jury on charges of wire fraud conspiracy, wire fraud, bank fraud, and money laundering for operating a Ponzi scheme "from at least as early as in or about June 2004 through in or about August 2011." [Docket #38, at ¶ 9 in 11-cr-701 ("Weinstein I")]. The indictment in *Weinstein I* alleged that Weinstein and unidentified co-conspirators "raised funds from victims for specific real estate transactions and used material portions of the raised funds for other purposes without disclosing those diversions of funds to victims." See Certification of Creizman, at Ex. B ¶ 2. On August 30, 2010, a Magistrate

1

Judge entered an Order setting conditions of release, and Defendant was released on bail shortly thereafter.

According to the government, reports surfaced that Weinstein violated his bail conditions by engaging in subsequent criminal conduct. This subsequent criminal conduct included meeting with witnesses outside the presence of counsel, engaging in financial transactions in contravention of the conditions of his release, and continuing to engage in other fraudulent activity. For example, in or around November 2012, the government learned of a doctor from Florida who was seeking investors for a medical device company, and who was introduced to Defendant Weinstein, Fredrick Todd, and Aaron Glucksman. It was reported to the government that Weinstein made various misrepresentations to the doctor, and promised investments that never materialized.

On January 3, 2013, Defendant Weinstein pleaded guilty to Count One of the *Weinstein I* indictment (charging him with conspiracy to commit wire fraud) and Count Thirty-Six of the indictment (charging him with transacting in criminal proceeds). The parties' plea agreement contained the following provision:

> If Eliyahu Weinstein enters a guilty plea and is sentenced on these charges consistent with the stipulated range under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Eliyahu Weinstein for his conduct, now known to the government, from in or about June 2004 through the date a plea is entered in this matter.

[docket #74 in 11-cr-701]. As of the date of Defendant Weinstein's plea, the facts referenced above surrounding the unidentified doctor was the extent of the conduct generally known to the government; however, they did not know any specifics about other potential victims or other subsequent frauds.

On or about February 6, 2013, more than one (1) month after Weinstein pleaded guilty in *Weinstein I*, the government first learned of specific details surrounding Weinstein's continuing criminal conduct. An attorney representing victims, J.C. and G.C. (collectively "the victims") informed the government that he represented individuals who had been victimized by the Defendant. On or about March 17, 2013, the government first met and interviewed the *Weinstein II* victims who, even at that time, were still acting in concert with Defendant and others acting at his direction and were hopeful their "investments" would be repaid.

Two (2) months later, on or about May 13, 2013, a Magistrate Judge signed a criminal complaint against Weinstein and issued a warrant for his arrest, having found that there was probable cause to believe that, between February 2012 and May 2013, Weinstein conspired to defraud victims G.C. and J.C., laundered the fraud proceeds, and committed five (5) substantive counts of wire fraud at various times throughout 2012 while on release in *Weinstein I*. The next day, Defendant Weinstein was arrested on those charges. Approximately one (1) week later, and more than five (5) months after Weinstein pled guilty in *Weinstein I*, the government first learned that Defendant Weinstein had also victimized A.Q., whose transactions make up the balance of the *Weinstein II* indictment.

Almost one (1) year later, on April 17, 2014, a grand jury indicted Weinstein in *Weinstein II*, finding probable cause to believe that from February 2012 through about May 2013, Weinstein defrauded G.C., J.C., and A.Q., with respect to purported investments in pre IPO shares of Facebook, Inc. and Florida real estate properties. On September 3, 2014, Defendant Weinstein pled guilty to Counts One, Two, and Twelve of the *Weinstein II* indictment, and also filed the instant motion which was preserved by the terms of his plea. In this motion, Defendant Weinstein makes two (2) claims: first, he argues that the government breached its plea agreement with him

in *Weinstein I* by filing the *Weinstein II* indictment, contending that the criminal conduct outlined in the *Weinstein II* indictment was covered by the plea agreement because he reasonably believed that it was included in the conduct from in or about June 2004 through January 3, 2013 for which the government agreed not to initiate further charges against him; second, Weinstein claims that because the charges in *Weinstein II* are encompassed by the conspiracy charged in Count One of *Weinstein I*, the charges in *Weinstein II* should be dismissed on double jeopardy grounds. Defendant also requests this Court to conduct a hearing on the instant motion. The Court will address each of these arguments below.

## II. DISCUSSION

### a. Legal Standard

To determine whether the government breached the plea agreement, the Court uses the principles of contract law. See, e.g., *United States v. Gebbie*, 294 F.3d 540, 545 (3d Cir. 2002); *United States v. Moscahlaidis*, 868 F.2d 1357, 1361 (3d Cir. 1989) ("Although a plea agreement occurs in the criminal context, it remains contractual in nature and is to be analyzed under contract-law standards."). Such agreements, however, are unique in light of special due process concerns and must be construed accordingly. *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000). Thus, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499, 30 L. Ed. 2d 427 (1971). The party alleging a breach bears the burden of proving the underlying facts establishing a breach by a preponderance of the evidence. See *United States v. Roman*, 121 F.3d 136, 142 (3d Cir. 1997).

Moreover, "[t]he Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after

conviction. And it protects against multiple punishments for the same offense.'" *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225, 53 L. Ed. 2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). "Where successive prosecutions are at stake, the guarantee serves "'a constitutional policy of finality for the defendant's benefit.'" *Id*. at 165-66 (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971) (plurality opinion)). That policy protects the accused "from attempts to secure additional punishment after a prior conviction and sentence." *Id*. (citing *Green v. United States*, 355 U.S. 184, 187-188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). The Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) explained the Double Jeopardy analysis to be "that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . . " If two (2) offenses are the same under this test then successive prosecutions are barred. *Brown*, 432 U.S. at 166.

   b. **Analysis**

In determining whether there has been a breach of the *Weinstein I* plea, the Court must "first examine the text of the contract, or, in this case, the language of the [] plea agreement." *Gebbie*, 294 F.3d at 545. "When ascertaining the intent of the parties, the language of the agreement, if unambiguous, should ordinarily be conclusive." *Marqalli-Olvera v. I.N.S.*, 43 F.3d 345, 351 (8th Cir. 1994); see also *United States v. Alegria*, 192 F.3d 179, 183 (1st Cir. 1999) ("If a plea agreement unambiguously resolves an issue, that usually ends the judicial inquiry."). Here, the government agreed that it would not "initiate any further criminal charges against Eliyahu Weinstein for his conduct, now known to the government, from in or about June 2004 through the

date a plea is entered in this matter." *Weinstein I*, docket no. 74. The "now known to the government" language is unambiguous, and, as stated above, the conduct that formed the basis for *Weinstein II* was not known to the government until well after the *Weinstein I* plea. Indeed, Weinstein's criminal conduct continued beyond the date of his *Weinstein I* plea, and the government was not even aware of any victims until after Weinstein pled guilty. As such, it cannot possibly be said that the government knew of Weinstein's conduct at the time he entered his plea in *Weinstein I* such that the new charges constituted a breach of this agreement. See *United States v. Sutton*, 794 F.2d 1415, 1423 (9th Cir. 1986) ("The words 'conduct known to the government' cannot fairly be construed as 'conduct that reasonably could have been known.' Based on the plain language of the agreement, the district court did not clearly err in finding that the parties reasonably understood the terms of the agreement to be that [the defendant] would not be prosecuted for criminal activity actually known to the government. . . ."); *United States v. St. Laurent*, Crim. A. No. 09-041, 2009 WL 3805607 (D.R.I. Nov. 10, 2009) (where the Court denied the Defendant's motion to dismiss the indictment, holding that the plea agreement "only applie[d] to offenses 'known to the government' at that time, and the government did not discover" the facts underlying the second indictment "until after the execution of the plea agreement.").

      Further, Defendant Weinstein's Double Jeopardy argument is wholly incorrect. As an initial matter, the *Blockburger* test requires the "same act or transaction." Here, *Weinstein II* can hardly be said to be the same act or transaction as *Weinstein I*. *Weinstein II* involved a different conspiracy, with different victims, and was at an entirely different time period. See *United States v. Papa,* 533 F.2d 815, 822 (2d Cir.1976) (holding that defendant could be tried for two conspiracies with different co-conspirators because "the mere fact that he supervised each [conspiracy] does not transform two separate conspiracies into one.") Weinstein's argument can

be seen as nothing more than an attempt to retroactively gain immunity from prosecution for committing new Ponzi schemes merely because he had already pled guilty to an earlier one.

Moreover, Defendant Weinstein's supplemental brief submitted on the basis of newly obtained evidence does not change the Court's analysis. Defendant Weinstein now supplements his submissions and seeks to introduce evidence demonstrating that it was Defendant's intent to be immunized from prosecution for a different conspiracy albeit similar in methodology to the conspiracy in *Weinstein I*. Defendant's argument overlooks the fact that the plea agreement in *Weinstein I* requires knowledge on the part of the government, and as discussed above, the government did not know any specifics about the *Weinstein II* conspiracy at the time Defendant Weinstein entered his plea. While the *Weinstein II* conspiracy may have commenced prior to January of 2013, it certainly continued thereafter thus making this subsequent criminal conduct outside the scope of the plea agreement in *Weinstein I*. Accordingly, the Court must deny Defendant's motion, and will also deny Defendant's request for a hearing, as there are no facts in dispute that would make a hearing necessary, and the Court is not convinced that conducting a hearing would serve any legitimate purpose.

### III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment [docket # 71] is DENIED. An appropriate Order accompanies this Opinion.

Date: December 8, 2014                                                          /s/ Joel A. Pisano
                                                                                                JOEL A. PISANO
                                                                                                United States District Judge